**United States District Court**
For the Northern District of California

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10

11  MONSTER CABLE PRODUCTS, INC.,            No. C 08-3338 PJH

12              Plaintiff,                   **ORDER DENYING MOTIONS TO
                                             DISMISS FOR LACK OF PERSONAL**
13        v.                                 **JURISDICTION AND FOR FAILURE
                                             TO STATE A CLAIM; GRANTING**
14  EUROFLEX S.R.L., et al.,                 **MOTION FOR MORE DEFINITE
                                             STATEMENT; GRANTING MOTION TO**
15              Defendants.                  **DISMISS COUNT VII FOR LACK OF
                                             SUBJECT MATTER JURISDICTION**
16  _____/

17        Defendants' motions to dismiss came on for hearing on July 1, 2009, before this

18  court.  Plaintiff appeared by its counsel Robert Payne, and defendants appeared by their

19  counsel Renee DuBord Brown and Michael Rudolph.  Having read the parties' papers and

20  carefully considered their arguments and the relevant legal authority, the court hereby rules

21  as follows and for the reasons stated at the hearing.

22                              **BACKGROUND**

23        Plaintiff Monster Cable Products, Inc. ("MCP") is a California corporation

24  headquartered in Brisbane, California.  MCP has been using the mark "MONSTER"

25  continuously since August 18, 1978.  MCP initially used "MONSTER" and related marks for

26  electrical, audio, video, clothing, and musical items.  It subsequently used the marks for

27  computer products and services, internet and electronic commerce, professional sports

28  events, sporting goods, community events, grammy award-winning music production and

United States District Court

For the Northern District of California

1  entertainment, television entertainment and merchandising, and computer, electronic, and

2  industrial cleaning products.

3      MCP first used "MONSTER" in connection with cleaning preparations and solutions

4  and air spray cans on November 8, 2008.  Beginning that same date, MCP used

5  "MONSTER SCREENCLEAN" for electronic equipment cleaning solutions and

6  preparations.  In August 2003, MCP first used "MONSTER iCLEAN" in connection with

7  cleaning solutions and cloths.  MCP owns over 100 federal registrations and has over 30

8  pending applications for "MONSTER" and derivative marks.

9      Defendant EuroFlex S.R.L., Italy ("EFI") is an Italian corporation that manufactures

10  household cleaning appliances (steam cleaners, vacuum cleaners, steam irons) in Europe

11  and China under the "monster Household Appliances" name.  It markets and advertises the

12  products exclusively in Europe.  EFI sold its products directly to QVC in 2004/2005, but

13  does not currently sell its products to any U.S. retailers.  EFI operates a website located at

14  www.euroflex.tv, which also advertises its products.  The website does not allow direct

15  orders by consumers.

16      Homeit LLC is a Delaware limited liability company.  It does business as defendant

17  EuroFlex Americas, Inc. ("EFA"), which has offices in New York.  EFA advertises, markets,

18  and distributes household cleaning appliances in the United States and Canada.  EFA

19  orders merchandise from EFI to maintain inventory and to fill purchase orders from U.S.

20  customers.  The Chinese manufacturer of EFI products ships those products directly to

21  EFA via ports in California, Virginia, and South Carolina.  EFA maintains the websites

22  www.monster1200.com and www.euroflexusa.com, both of which allow for direct ordering.

23  EFA has advertised and sold products to California and U.S. residents.

24      EFA is not an affiliate or subsidiary of EFI, nor was it created by EFI.  The two

25  companies are separate legal entities with separate corporate books and records.  EFI

26  does not direct EFA's day-to-day marketing, advertising, or sales activities.  Nevertheless,

27  the two companies are related in one regard – Andrea Milanese, chief executive officer

28  ("CEO") of EFI, also serves as EFA's CEO.

**United States District Court**
For the Northern District of California

1   EFI filed a trademark application with the Patent and Trademark Office ("PTO") for

2   the mark "MONSTER" on June 9, 2003, for use in connection with multi-purpose steam

3   cleaners for domestic use.  MCP filed a notice of opposition to this application on June 24,

4   2004, which was dismissed.  MCP's appeal is currently pending.  EFI also maintains

5   applications with the PTO filed since September 6, 2008, for the marks "EUROFLEX

6   MONSTER OF ITALY" (with design), "MONSTER EUROFLEX OF ITALY" (with design),

7   and "EUROFLEX MONSTER OF ITALY" (with design).  MCP has filed an opposition to

8   each of these applications with the Trademark Trial and Appeal Board ("TTAB").

9   Defendants EFA and EFI now move for (1) dismissal of EFI from the case for lack

10   of personal jurisdiction under Rule 12(b)(2), (2) dismissal of counts I-VI of the amended

11   complaint for failure to state a claim under Rule 12(b)(6), (3) a more definite statement of

12   counts I-VI of the amended complaint under Rule 12(e), and (4) dismissal of count VII of

13   the amended complaint for lack of personal jurisdiction over EFI under Rule 12(b)(2), or for

14   plaintiff's failure to allege a true case or controversy under Rule 12(b)(1).

15   **DISCUSSION**

16   **I.   Motion To Dismiss Defendant EFI for Lack of Personal Jurisdiction**

17   Defendants argue that EFI must be dismissed from this action pursuant to Federal

18   Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  EFI contends that it lacks

19   sufficient contacts with California and the United States to warrant this court's exercise of

20   jurisdiction over it under either the state long-arm statute or Federal Rule of Civil Procedure

21   4(k)(2).

22   A.   Legal Standard

23   When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

24   plaintiff bears the burden of demonstrating that jurisdiction is proper.  Rio Properties, Inc. v.

25   Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).  Where the motion is based on

26   written materials rather than an evidentiary hearing, the plaintiff need only make a prima

27   facie showing of jurisdictional facts.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d

28   797, 800 (9th Cir. 2004).  In such cases, the court need only inquire into whether the

3

**United States District Court**
For the Northern District of California

1    plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction.  Id.

2    Although the plaintiff cannot rest on the bare allegations of the complaint, uncontroverted

3    allegations in the complaint must be taken as true.  Id.  Conflicts between the parties over

4    statements contained in affidavits must be resolved in the plaintiff's favor.  Id.

5         California's long-arm statute authorizes the exercise of personal jurisdiction on any

6    basis not inconsistent with the state or federal constitution.  Cal. Code Civ. Proc. § 410.10.

7    To comport with due process, the court must consider whether EFI has sufficient "minimum

8    contacts" with California, such that the exercise of personal jurisdiction "does not offend

9    traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326

10   U.S. 310, 316 (1945).  Under the minimum-contacts test, the forum contacts of each

11   defendant are assessed individually.  Calder v. Jones, 465 U.S. 783, 790 (1984).  Because

12   it is undisputed that EFA is subject to personal jurisdiction due to its sales and marketing in

13   California, the personal jurisdiction analysis focuses on EFI's forum contacts.

14        Personal jurisdiction over a non-resident of the forum state can be either "general" or

15   "specific."  If a defendant is domiciled in the forum state, or if its activities there are

16   "substantial, continuous, and systematic," a federal court when permitted by the state's

17   long-arm statute may exercise general jurisdiction as to any cause of action, even if

18   unrelated to the defendant's activities within the state.  See Perkins v. Benguet Consol.

19   Mining Co., 342 U.S. 437, 445, 446 (1952).  Here, MCP does not contend that the court

20   has general jurisdiction over EFI.

21        If a non-resident's contacts with the forum state are not sufficiently "continuous and

22   systematic" for general jurisdiction, that defendant may still be subject to specific

23   jurisdiction on claims related to its activities or contacts in the forum.  See Tuazon v. R.J.

24   Reynolds Tobacco Co., 433 F.3d 1163, 1169 (9th Cir. 2006).  A plaintiff may assert specific

25   jurisdiction over a defendant where (1) the defendant has purposefully availed himself of

26   the benefits and protections of the forum state, (2) the claim arose directly out of

27   defendant's contacts with the forum state, and (3) the exercise of jurisdiction is fair and

28   reasonable.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985);

4

United States District Court
For the Northern District of California

1    Schwarzenegger, 374 F.3d at 802.

2         The first requirement of the minimum-contacts test has two aspects.  The defendant

3    must have either (1) purposefully directed its activities at residents of the forum, or

4    (2) purposely availed itself of the privilege of conducting activities within the forum.  Hanson

5    v. Denckla, 357 U.S. 235, 253-54 (1958); see Schwarzenegger, 374 F.3d at 802.  The

6    purposeful direction prong is analyzed in intentional tort cases.  Holland Am. Line Inc. v.

7    Wartsila N. Am., Inc., 485 F.3d 450 (9th Cir. 2007).  Courts generally apply the purposeful

8    availment prong when the defendant invokes the benefits and protections of the laws in the

9    forum, such as in contract cases.  Schwarzenegger, 374 F.3d at 802-03.

10        The three minimum contact requirements protect non-residents from being sued in

11   foreign courts as a result of random, fortuitous, or attenuated contacts over which they

12   have no control.  Burger King, 471 U.S. at 475.  All three requirements must be met to

13   ensure due process of law for the defendants.  See Pebble Beach Co. v. Caddy, 453 F.3d

14   1151, 1155 (9th Cir. 2006).  In addition, courts including the Ninth Circuit have adopted a

15   "flexible approach" that may allow personal jurisdiction with a lesser showing of minimum

16   contacts where dictated by considerations of reasonableness.  See Ochoa v. J.B. Martin

17   and Sons Farms, Inc., 287 F.3d 1182, 1188 n.2 (9th Cir. 2002).

18        B.    Specific Jurisdiction in California

19        In its amended complaint, MCP alleges that EFI is subject to the court's jurisdiction

20   based on EFI's purposeful advertising in California and EFI's purposeful placement of

21   products in the stream of commerce.  MCP also asserts that EFA's actions impute EFI

22   because EFA is EFI's agent, EFA acts as EFI's licensee, and EFI and EFA are related

23   companies.

24        Defendants claim that MCP has failed to identify any specific advertisements that

25   EFI purposefully directed to California.  Defendents acknowledge the companies are

26   related in so far as Andrea Milanese serves as CEO of both EFI and EFA, but contend that

27   EFI is not subject to personal jurisdiction under theories of agency, stream of commerce,

28   licensing, or related companies.

5

United States District Court
For the Northern District of California

1    The facts do not support finding the level of day-to-day control required to either hold

2    a licensor liable or to apply the agency exception, nor do they indicate that EFI is subject to

3    personal jurisdiction under a stream of commerce theory.  The related-companies doctrine

4    adds nothing to the courts personal jurisdiction analysis.  For these reasons and those

5    stated at the hearing, the court is unpersuaded that EFI has direct contacts sufficient to

6    subject it to specific jurisdiction under California's long-arm statute.

7         C.    National Contacts Jurisdiction/Federal Long-arm Statute

8         Pursuant to Federal Rule of Civil Procedure 4(k)(2), known as the federal long-arm

9    statute, a plaintiff can establish jurisdiction over a defendant based on the aggregate

10   contacts of the defendant with the United States as a whole.  Pebble Beach, 453 F.3d at

11   1159.  To do so, the plaintiff must prove three factors.  "First, the claim against the

12   defendant must arise under federal law.  Second, the defendant must not be subject to the

13   personal jurisdiction of any state court of general jurisdiction.  Third, the federal court's

14   exercise of personal jurisdiction must comport with due process."  Id. (internal citations

15   omitted).

16        Here, the first factor is met because plaintiff claims trademark infringement under

17   15 U.S.C. § 1125(a).  The second factor is met if the defendant does not identify another

18   state court in which the suit could proceed.  Holland, 485 F.3d at 461.  The plaintiff is not

19   required to prove lack of jurisdiction in every state.  Id.  Defendants in this case have not

20   conceded to jurisdiction in another state, so the second factor is satisfied.  The third factor's

21   due process analysis is identical to the analysis for the forum state except the relevant

22   forum is the United States as a whole.  Pebble Beach, 453 F.3d at 1159.  The court thus

23   again turns to purposeful direction or availment, dual prongs of the first requirement of the

24   minimum-contacts test.

25        MCP claims that EFI falls under the specific personal jurisdiction of this court based

26   on its direct contacts with the nation as a whole largely for the same reasons considered by

27   the court in its California jurisdictional analysis.  The few additional reasons MCP provides

28   do not persuade the court that EFI purposefully directed products to the United States.

United States District Court

For the Northern District of California

1    MCP also contends that EFI's actions satisfy the purposeful availment prong for

2    specific jurisdiction under the federal long-arm statute.  In particular, EFI filed an "intent to

3    use" application with the PTO for the mark "MONSTER."

4        A showing that a defendant purposefully availed himself of the privilege of doing

5    business in a forum state typically consists of evidence of the defendant's actions in the

6    forum, such as executing or performing a contract there.  Schwarzenegger, 374 F.3d at

7    802.  In this way, the defendant purposely avails himself of "the privilege of conducting

8    activities within the forum [s]tate, thus invoking the benefits and protections of its laws."

9    Hanson, 357 U.S. at 253.  In exchange for the forum state's benefits and protections, the

10   defendant must submit to the burden of litigation in the forum state.  Burger King, 471 U.S.

11   at 476.  Here, the "forum state" is the country as a whole under the federal long-arm

12   statute.

13       MCP argues that EFI's application illustrates an intent to sell goods in the United

14   States.  Defendants respond that under 15 U.S.C. § 1071(b), jurisdiction over trademark

15   appeals resides with the United States District Court for the District of Columbia ("D.C.

16   district court").  Additionally, defendants claim that under Zeneca Ltd. v. Mylan Pharm., Inc.,

17   173 F.3d 829 (Fed. Cir. 1999), the government contacts exception should apply to EFI's

18   application to the PTO.

19       Section 1071(b) states that the D.C. district court has jurisdiction over civil actions

20   involving an adverse party residing in a foreign country initiated after issuance of an

21   unsatisfactory decision by the PTO director or the TTAB.  Here, because defendants have

22   not indicated that they would actually be subject to jurisdiction in the District of Columbia,

23   this aspect of defendant's argument does not defeat jurisdiction under the federal long-arm

24   statute.  See Holland, 485 F.3d at 461.

25       Zeneca involved a claim by a British corporation against a West Virginia corporation.

26   See Zeneca, 173 F.3d at 830.  The Federal Circuit found that the defendant was not

27   subject to jurisdiction in Maryland based on its petition to the Food and Drug Administration

28   in that state.  Id. at 832.  Applying the government contacts exception, the court held that

United States District Court

For the Northern District of California

1   petitioning the national government does not qualify as a contact in the personal jurisdiction

2   analysis. Id. at 831.

3       The government contacts exception was originally crafted to preserve First

4   Amendment rights associated with public participation in the federal government and to

5   prevent the creation of national supercourts in the District of Columbia. Id. (citing Envtl.

6   Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc., 355 A.2d 808, 813 (D.C. Cir. 1976)

7   (adopting the governmental contacts exception in the District of Columbia)).  It also

8   implicates due process. Id.  In U.S. Indus., Inc. v. Maclaren, No. 75-2086, 1976 U.S. Dist

9   LEXIS 15331, at *11 (D.D.C. Apr. 29, 1976), the D.C. district court applied the government

10  contacts exception to deny jurisdiction over a British citizen who had applied to the PTO.

11      Following a change in the District of Columbia's long-arm statute, the D.C. Court of

12  Appeals in Rose v. Silver, 394 A.2d 1368, 1374 (D.C. Cir. 1978), concluded that "the First

13  Amendment provides the only principled basis for exempting a foreign defendant from

14  suit . . . ."  Courts in the D.C. circuit subsequently questioned whether jurisdiction could be

15  asserted when a defendant's contacts did not involve First Amendment concerns. See,

16  e.g., Naartex Consulting Corp. v. Watt, 722 F.2d 779, 788-87 (D.C. Cir. 1983) (declining to

17  resolve the issue because the domestic defendant's activities implicated the right to

18  petition); see also Am. Standard, Inc. v. Sanitary Wares Mfg. Corp., No. 86-1997, 1987

19  U.S. Dist. LEXIS 14924, at *10 (D.D.C. June 30, 1987) (applying the government contacts

20  exception to a foreign defendant that filed an application with the PTO).  Here, First

21  Amendment concerns are not implicated in the context of the foreign defendant EFI. See

22  Envtl. Research, 355 A.2d at 813 (recognizing that the right to petition applies to the

23  "national citizenry").

24      The federal long-arm statute requires simply that jurisdiction comport with due

25  process. Pebble Beach, 453 F.3d at 1159.  At its base, due process seeks to ensure that a

26  defendant is not haled into court for contacts that are random, fortuitous, or attenuated.

27  Burger King, 471 U.S. at 475.   It places responsibility on defendant's own actions that

28  create a substantial connection with the forum. Id.  The Ninth Circuit's flexible approach

8

United States District Court
For the Northern District of California

1   allows for a lesser showing of contacts if considerations of reasonableness are met.

2   Ochoa, 287 F.3d at 1188 n.2.

3          Here, EFI's June 2003 application to the PTO to gain trademark protection in the

4   United States for its "MONSTER" mark constitutes a substantial contact.  EFI would be able

5   to sue for protection against allegedly infringing marks based on its trademark registration.

6   The privilege of trademark registration invokes the benefits and protections of trademark

7   law.  It is reasonable and does not offend "traditional notions of fair play and substantial

8   justice," Int'l Shoe, 326 U.S. at 316, to require EFI to submit to the burden of litigation.  For

9   these reasons, the court refuses to extend the government contacts exception to the facts

10  of this case where jurisdiction over EFI otherwise comports with due process.

11         The court finds that EFI is subject to personal jurisdiction based on its June 2003

12  application to the PTO.  Because EFI is subject to jurisdiction under Rule 4(k)(2), MCP's

13  request for jurisdictional discovery is denied as moot.

14  **II.    Motion to Dismiss and/or Motion for a More Definite Statement**

15         MCP lists three trademarks to which it claims to have acquired prior rights through

16  use in commerce, namely "MONSTER," "MONSTER SCREENCLEAN," and "MONSTER

17  iCLEAN."  MCP alleges that defendants have infringed its registered and unregistered

18  marks, which constitutes sufficient notice under Rule 12(b)(6).

19         Defendants argue that counts I-VI of MCP's amended complaint should be

20  dismissed for failure to state a claim and alternatively move for a more definite statement.

21  Defendants contend that MCP failed to identify the specific trademarks that are at issue.

22         For the reasons stated at the hearing, the court denies defendants' Rule 12(b)(6)

23  motion to dismiss but orders MCP to provide a more definite statement within 14 days of

24  the hearing date identifying each of its marks, whether registered or unregistered, that have

25  allegedly been infringed.  The statement shall be verified and will bind MCP as would an

26  amended pleading.

27

28

**III.    Motion to Dismiss Count VII for Lack of Jurisdiction**

Defendants argue that count VII of MCP's amended complaint requesting declaratory relief regarding EFI's three pending applications for trademark registration should be dismissed.  Defendants contend their Rule 12(b)(2) motion should be granted because the applicant is EFI, over whom the court lacks personal jurisdiction.  This argument fails because the court has personal jurisdiction over EFI under Rule 4(k)(2) for the reasons discussed above.

Defendants also argue that the claim fails to rise to the level of threat required by MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007), and that the court should dismiss the claim for lack of subject matter jurisdiction.  The analysis thus turns to whether there is an actual case or controversy sufficient to find subject matter jurisdiction over EFI.

The Declaratory Judgment Act ("DJA") authorizes the court to "declare the rights and other legal relations of any interested party seeking such declaration" when there is an "actual controversy."  28 U.S.C. § 2201(a).  Under Ninth Circuit trademark law, to satisfy the actual controversy requirement, the plaintiff must show "real and reasonable apprehension" that it would be liable for infringement if it continued marketing its product.  Chesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393, 396 (9th Cir. 1982) (citing Societe de Conditionnement en Aluminium v. Hunter Eng'g, Inc., 655 F.2d 938 (9th Cir. 1981)); see also Rhoades v. Avon Prods. Inc., 504 F.3d 1151, 1157 (9th Cir. 2007) (treating the controversy analysis similarly for patents and trademarks).

In MedImmune, a patent licensing dispute, the Supreme Court stated that the actual controversy requirement of the DJA demands only

> that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. . . . The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

MedImmune, 549 U.S. at 127 (citations and quotations omitted).

United States District Court

For the Northern District of California

1    In response to MedImmune, the Federal Circuit dropped its discredited "reasonable

2    apprehension of imminent suit" test and has adopted in its place the "all circumstances"

3    test.  Under this new approach, a declaratory judgment plaintiff is required only to satisfy

4    Article III, which includes standing and ripeness, by showing under "all the circumstances"

5    an actual or imminent injury caused by the defendant that can be redressed by judicial

6    relief and that is of "sufficient immediacy and reality to warrant the issuance of a

7    declaratory judgment."  Teva Pharm. USA, Inc. v. Novartis Pharm. Corp., 482 F.3d 1330,

8    1338 (Fed. Cir. 2007) (quoting MedImmune, 549 U.S. at 127).

9    MCP argues that declaratory relief is appropriate where there are proceedings

10    pending before the TTAB and actual litigation or its threat of litigation, citing Chesebrough,

11    666 F.2d at 396, 397; Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1247 (10th Cir.

12    2008); and Jeffrey Banks, LTD v. Jos. A. Bank Clothiers, Inc., 619 F. Supp. 998, 1002

13    (D. Md. 1985).  Defendants contend that in all of these cases the plaintiff had been

14    threatened to some extent by the defendant.

15    Prior to MedImmune, the Ninth Circuit in Chesebrough, 666 F.2d at 396, held that

16    the plaintiff had a "real and reasonable apprehension" that the defendant would sue it for

17    trademark infringement.  The defendant had sent the plaintiff a letter that laid out a prima

18    facie case of infringement.  Chesebrough, 666 F.2d at 396.  In Jeffrey Banks, 619 F. Supp.

19    at 1002, the court similarly noted that the defendant had sent a letter to the plaintiff alerting

20    it that use of the mark at issue violated section 1125(a).

21    In Surefoot, the only post-MedImmune case cited by the parties, the court stated

22    that a TTAB opposition filing is not conclusive evidence of an actual infringement dispute.

23    Surefoot, 531 F.3d at 1246.  In addition to five TTAB oppositions, however, the defendant

24    had repeatedly claimed that the plaintiff had engaged in infringing activity.  Id.  Such

25    evidence indicated an underlying infringement dispute sufficient to give the court

26    jurisdiction.  Id. at 1247.

27    Here, MCP states in its complaint only that there is an "actual, substantial, and

28    justiciable controversy" between the parties.  Unlike in the cases it cites, MCP has not

11

alleged any facts that would indicate that this is a "real and substantial" dispute.  See

MedImmune, 549 U.S. at 127.  Additionally, the marks that EFI seeks to register all involve

the combination of a design with some variation of the words "MONSTER," "EUROFLEX,"

and "ITALY."  At the hearing MCP conceded that it does not anticipate a suit from EFI.

These factors support the court's finding that "under all the circumstances," there is no

substantial controversy.  Id.  Because a grant of declaratory relief falls within its discretion,

the court grants defendants' Rule 12(b)(1) motion to dismiss count VII.

## CONCLUSION

For the foregoing reasons and those stated at the July 1, 2009, hearing, the court:

(1) DENIES defendants' Rule 12(b)(2) motion to dismiss EFI for lack of personal

jurisdiction; (2) DENIES defendants' Rule 12(b)(6) motion to dismiss counts I-VI of the

amended complaint for failure to state a claim upon which relief can be granted;

(3) GRANTS defendants' Rule 12(e) motion for a more definite statement; (4) DENIES

defendants' Rule 12(b)(2) motion to dismiss count VII of the amended complaint; and

(5) GRANTS within its discretion defendants' Rule 12(b)(1) motion to dismiss count VII of

the amended complaint.

**IT IS SO ORDERED.**

Dated:  July 10, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California

12